**232 A.2d 603.**

RHODE ISLAND HOSPITAL TRUST CO., *Executor and Trustee*
*vs.* ANNE ALLEN CHURCHILL *et al.*

AUGUST 18, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

RoBERTS, C. J. This is a bill in equity for instructions relative to the distribution of trust property and the construction of a will. When the cause was ready for final judgment, it was certified to this court under G. L. 1956, §9-24-28, as amended, for our determination. The complainant is the surviving trustee under the will of William D. Ely, hereinafter referred to as "the father." The will in which the trust was established was executed in 1907, and the father died in 1908. The respondents are persons and legal representatives of persons who claim an interest in the trust property.

The father in the residuary clause of his will established a trust that was to endure for the lives of a number of persons designated in sec. II thereof "* * * and survivor of them, and twenty-one (21) years thereafter * * * or for so much of said term as may be required to carry out the objects and purposes of this Trust * * *." The father then provided for a life estate in the income of the corpus of the trust in his son William Ely, hereinafter referred to as "the son." The pertinent language provided that in the discretion of the trustees "* * * to pay * * * the net income of of said Trust Estate, to my son, William Ely, toward his support, well being and enjoyment for and during the term of his natural life, or to withhold the same and accumulate it, or a part thereof, or to pay a portion, not exceeding one fourth part of the income to his wife, and the balance (if deemed best) to his children, and in such varying portions or proportions as from time to time my said 'Trustee for the time being' may judge best."

In sec. III of his will the father conferred upon his son a limited power to distribute by way of a testamentary ap-

pointment the corpus of the trust fund established in sec. II of the will. The son was expressly authorized in an exercise of such power to apportion and allot to his children or issue and to his wife or widow, if any survived him, distributory shares in the corpus of the trust and with authority also to exclude any of them from such distributory shares. The father then made further provision that such shares of the principal estate so apportioned and allotted under the power of appointment were, on the death of his son, to remain subject to the trust created in sec. II. The specific language of sec. III thereof follows:

> "Further, it is my will and I hereby give and grant to my son, full power and authority, by his will, or other instrument in nature of a will, to assign, apportion, allot to, for, and in behalf of his children, child or issue, and his wife or widow, if any, him surviving, or such, or any of them to exclude from any of such several distributory shares or portions of said Principal Estate, given and devised to my said 'Trustee for the time being' in Section II hereof, as may at the time of making such will or instrument in nature of a Will, be, in his judgment, most reasonable and just towards them, considering the general and special circumstances in their several cases, such estate, shares and portions to remain in Trust after the death of my said son, in the hands of and administered by the surviving 'Trustee for the time being'."

Section IV of the father's will directs the disposition to be made of the corpus of the trust after the son's death, whether the power was exercised or not. In sec. IV (a) the father provided that in case his son died leaving issue, having exercised the power given him in sec. III, the trustee of the trust created in sec. II "* * * shall allot and set off the said estate and property to the family, children, child or issue, and widow (if any) of my said son, as so specified and designated by him, and in the several proportions or shares so by him allotted to them in the exercise of said power."

Section IV (b) of the will makes provision for the disposition of the corpus of the trust if the power conferred upon the son in sec. III were not exercised by him or exercised in part only. The direction is that on the death of the son in such circumstances, the estate and property were by the trustee to be distributed to the issue of the son and to his widow, if any, and that the widow was to have a life estate in one sixth of the net income of the corpus. Section IV (b) reads as follows:

> "Otherwise, and in case said power given him in Section III, has not been exercised by him, or only in part, said Estate and property so unallotted shall, by said 'Trustee for the time being', be distributed to the issue of my said son, and to his widow (if any), *not more than one sixth part of the net income* for life, in just and fixed lawful proportions the issue to take by representation, per stirpes and not per capita, and as in course of descent and distribution of personal estate from my said son." (italics ours)

In sec. IV (c) the father provides that the property is to remain in trust, whether it was distributed under an exercise of the power of appointment or under the gift over to the issue of the son set out in sec. IV (b). Section IV (c) reads as follows:

> "And in either case my surviving 'Trustee for the time being', shall continue to hold in Trust all and singular the Estate so allotted or distributed to the female issue *or descendants* (if any) of my said son, as and for their sole and separate use, as their separate estate, free from the control of any then, or future husband, during the continuance of this Trust.
>
> "And the several shares or portions of the male issue, or descendants, if any, shall after the death of my said son, be made over and transferred to such male issue, or descendants, as may have attained the age of twenty-one years, at the time of my son's death; or, as they may thereafter attain the age of twenty-one years." (italics ours)

The son died in 1949, leaving a last will and testament

executed in 1941. In that will he purported to exercise in part the power of appointment conferred upon him in his father's will. Stating that he intended to exercise the power only so far as to give his widow during her lifetime the sum of $6,000 per year out of the net income of the trust estate and to give any remaining income accruing to the trust estate equally to his two daughters during their lifetime, he further directed that upon the death of his wife, all of the net income of the trust estate go in equal shares to his two daughters, and, upon the death of either of them, her issue would take the income that she would receive from the trust. He then stated expressly that he intended to make no further exercise of the power and that it was his intention that the trust property pass and be disposed of under the will of his father. The precise provisions of clause Sixth of the son's will read as follows:

> *"SIXTH*: * * * I hereby exercise said power so far as and only so far as to allot to my said wife, Adelaide Fenton Ely, if she shall survive me, during her lifetime the sum of Six Thousand Dollars ($6000) each year, payable in quarterly payments or oftener, out of the net income of the trust estate created under the will of my said father instead of the one-sixth part thereof which she would receive if I had not exercised said power, and I divide the remaining net income accruing under said trust established by my said father's will equally between my said two daughters during their lifetime, and upon the death of my said wife I direct that the net income from said trust estate be divided equally between my said daughters. Upon the death of either of my said daughters I direct that her issue shall take the income which she would receive under said trust; and I intentionally refrain from any other or further exercise of said power, as I wish and intend that said trust property shall pass and be disposed of under the said will of my father in every respect, excepting only that the portion of the net income to be received by my said wife, Adelaide Fenton Ely, during her life shall be in the manner

above set forth and that the income of others be correspondingly reduced."

The son was survived by his widow, Adelaide M. Fenton Ely, and by two daughters, both married, one Cora Codman Guild, and the other Anne Allen Churchill. On August 7, 1954, Cora Codman Guild died, leaving a last will and testament duly probated in the Commonwealth of Massachusetts. In that will she left her residual estate to her four children, all of whom are named as respondents in this bill.

It appears from the record that complainant trustee, pursuant to the provisions of clause Sixth of the will of the son, purporting to partially exercise the power, undertook to pay $6,000 of the annual net income of the trust to his widow and to divide the remainder of said net income of the trust between his two daughters, Mrs. Guild and Mrs. Churchill. However, after the death of Mrs. Guild in 1954, the trustee paid one half of the net income of the trust in equal shares to the children of Mrs. Guild and one half thereof to Mrs. Churchill.

On March 10, 1964, the son's widow, Adelaide M. Fenton Ely, died, being survived by Anne Allen Churchill. Thus, Mrs. Churchill became the last surviving member of the class of designees upon whose lives the time of termination of the trust set up in sec. II was to be determined. The trustee is now alleging that it is uncertain as to whether there has been a partial termination of the trust that would entitle some of the issue, at least the children of Mrs. Guild, to a distribution of part of the principal of the corpus at this time. The question before us is whether equitable estates in the corpus of the trust established in sec. II of the father's will, on default in the exercise of the power, vested in the issue of his son as remaindermen as provided for in sec. IV (b) of the will and entitling them now to a distribution of the corpus, the life estate of the son's wife in the income of the trust having terminated with her death in 1964.

In construing the provisions of a testamentary instrument, it is elementary that the court first attempt to ascertain the intent of the testator from the contents of that instrument and, where such an intent is clearly disclosed and is lawful, to give effect thereto. *Sawyer* v. *Poteat,* 90 R. I. 51, 153 A.2d 541; *Rhode Island Hospital Trust Co.* v. *Sanders,* 84 R. I. 347, 125 A.2d 100; *Industrial National Bank* v. *Barrett,* 101 R. I. 89, 220 A.2d 517.

We perceive nothing in the language of the will that obscures the intent of the father to provide for the support and welfare of his son and his son's family during the son's life and thereafter to make an equitable distribution of the corpus between the issue of his son. In sec. II of the will he clearly gave the son a life estate in the income of the trust established therein and in sec. III of the will conferred upon his son a special exclusionary power of appointment with respect to the corpus of the estate. The class with respect to whom such power could be exercised is limited to the issue of his son and his son's widow, if any. He further provided in express terms, in default of an exercise of this power of appointment conferred upon his son, for a gift over of the corpus of the estate to the issue of his son as is provided for in sec. IV (b) of the will. This gift over to the issue of his son is subject to a life estate to the son's widow, if any, in one sixth of the net income thereof.

It is equally clear that the father intended that the shares of the corpus of the trust distributed to the issue of his son were to remain subject to the trust established in sec. II of his will, at least through the minority of the male issue and during the lifetime of the female issue as is directed in sec. IV (c) of the will. A reading of sec. II and sec. IV (c) of the will discloses, in our opinion, that the father contemplated that the primary trust might well be held to have terminated upon the death of his son and a distribution of the corpus of his estate to the issue of his son, this on the ground that the objectives of the primary

trust had thereby been accomplished. He therefore directed the trustee, after such distribution, to continue to hold the shares of the corpus during the minority of the male issue and during the lifetime of the female issue insulated from control by any then or future husband. This view is consistent with the express desire of the father set out in sec. IV (c) that the trustee continue to hold in trust "* * * all and singular the Estate so allotted or distributed * * *" to the female and male issue of the son.

It is conceded there was in this case a default as to the exercise of the power of appointment with respect to the corpus of the trust. That being so, in our opinion, this case closely resembles *Industrial National Bank* v. *Clark,* 98 R. I. 434, 204 A.2d 310. There, as in the instant case, there was a gift over of the remainder of the estate to a class subject to a life estate in the income, and this court therein held that membership in the class determined upon the death of the life tenant. We said in that case: "It is well settled that when a gift is made to a class following an intervening life estate in a third person, membership in the class determines as of the expiration of the preceding life estate." On this basis we conclude that upon the death of the son, the class entitled to take under the gift over of the remainder in the father's will was determined and consisted of Cora Codman Guild and Anne Allen Churchill.

Again, we said in *Hayden for an Opinion,* 51 R. I. 117, 118, 152 A. 254, 255: "The law favors the early vesting of an estate given by will and, in the absence of a clear manifestation of the intention of the testator to the contrary, estates are held to vest at the earliest possible moment." This court in that case went on to point out that "A remainder is vested when a definite interest is created in a certain person and no condition is imposed other than the determination of the precedent estate." In short, the test as to when a remainder vests is "* * * its present capacity to take effect in possession whenever the prior estate shall

determine * * *." We similarly held in *Barstow* v. *Young,* 68 R. I. 467, 29 A.2d 640.

It is our conclusion that in the instant case the class to take under the provisions of sec. IV (b) of the father's will determined as of the death of the son, for at that time a definite interest in the estate was created in the issue of the son, his daughters Cora and Anne. The only condition imposed upon its vesting in enjoyment was the determination of the life estate in one sixth of the net income thereof given the widow of the son in sec. IV (b) of the will.

The life estate of the son's widow having terminated in 1964, it is clear that, under the view we take, the corpus of the estate vested in possession and enjoyment in equal shares in the estate of Cora Codman Guild and in Anne Allen Churchill. The question remains whether the interest of these remaindermen is subject to the trust established in sec. II or whether they are entitled now to distribution free of the trust.

The directions contained in the father's will relating to the continuance of the prime trust, that is, the trust established in sec. II thereof, indicates a clear understanding as to the effect of the vesting of the estates in the issue of the son subject to the life estate of the widow on the continuance of that trust. In the first place, sec. III, establishing the power in the father's will and providing that, after the allocation by the son in an exercise thereof, the "* * * shares and portions to remain in Trust after the death of my said son, in the hands of and administered by the surviving 'Trustee for the time being' " may be disregarded, for it is conceded that there was no exercise of the power, at least with respect to the corpus, if indeed it was exercised validly at all.

There being default in the exercise of the power, the provisions of sec. IV (b) of the father's will become highly significant. In that section the father directs that the corpus shall "* * * by said 'Trustee for the time being', be dis-

tributed to the issue of my said son, and to his widow (if any), not more than one sixth part of the net income for life * * *." In short, this is a mandatory direction to the trustee to distribute the corpus of the trust to the issue of the son, in the instant case to Cora and to Anne, such distribution, of course, being subject to the life estate in the son's widow. At this point a close examination of the will discloses a recognition by the father that a serious question now arises as to whether the distribution once being made, the primary trust would terminate, the objectives thereof having been attained.

This becomes clear when we read the provisions of sec. IV (c), in which he directs that whether the distribution resulted from an exercise of the power or by operation of law, the trustee "* * * shall continue to hold in Trust all and singular the Estate so allotted or distributed to the female issue or descendants (if any) of my said son, as and for their sole and separate use, as their separate estate, free from the control of any then, or future husband, *during the continuance of this Trust.*" (italics ours) This obviously refers to the apparent separate use trust set out in sec. IV (c). He then proceeds in the same section, namely IV (c) to direct that the trustee shall hold the distributive shares due to male issue of his son until they have attained the age of twenty-one years.

In other words, the father's will contemplates the probable necessity for expressly continuing the life of the trust for some time after such distribution providing for partial termination upon any male issue reaching the age of twenty-one with respect to their shares and for the purported separate use trusts to continue through the lifetime of any female issue taking under sec. IV (b) of the father's will.

We have already concluded that with the default in the exercise of the power of appointment conferred on the son, the class to take the gift over on such default was deter-

mined upon his death. When that event occurred, those constituting the class were the daughters, Cora Codman Guild and Anne Allen Churchill. It is clear that there was a failure of male issue at the time the class determined so that we need not concern ourselves with those provisions of sec. IV (c) which direct that the shares of any male issue included in the class be held in trust throughout their minority.

However, the shares of the female issue vested in right on the death of the son and were distributable to such female issue upon the termination of the life estate of the son's widow, and shares so distributed were required to be held by the trustee under the provisions of sec. IV (c). There has been considerable discussion in the briefs as to whether the father intended in sec. IV (c) to create separate use trusts for the sole purpose of insulating the shares of the female issue from control of any then or future husband and, if so, whether the validity of such separate use trusts would have been affected by the enactment of the Married Women's Act by the general assembly of this state in 1896. In our opinion, no consideration need be given this question, for, as we understand the dispositive intent of the father, these particular provisions of sec. IV (c) are not intended to establish a secondary trust but were intended as directions to the primary trustee to continue to hold the estate throughout the life of such female issue with direction to keep it free of control of any then or future husband. In short, we construe the language of sec. IV (c) relating to female issue as constituting additional instructions to the trustee as to its obligation in managing and controlling the shares of the female issue after they were distributed on the death of the life tenant.

We conclude then that upon the termination of the life estate of the son's widow in 1964, the corpus of the trust established in sec. II became distributable to the issue of

the son as it had been determined at his death. The class consisted of Cora Codman Guild and Anne Allen Churchill. Because we are of the opinion that the provisions of sec. IV (c) which relate to the female issue are from their own language restricted to such issue during their lifetime, the share to be distributed to Cora Codman Guild should be paid over to the administrator c.t.a. of her estate free from the trust for redistribution under the provisions of her will. The share that is distributable to Anne Allen Churchill is to be set aside and allocated by the trustee and held by it subject to the provisions of the trust set up in sec. II of the father's will and as augmented by the provisions of sec. IV (c) of said will.

The parties may present a judgment to the court in chambers in accordance with this opinion.

*Tillinghast, Collins & Tanner, William M. Sloan,* of counsel, Peter J. McGinn, for complainant.

Attorneys for certain respondents:

*Edwards & Angell, Bancroft Littlefield, Ronald R. Lagueux;*

*Hinckley, Allen, Salisbury & Parsons, Edward M. Watson;*

*Hale, Sanderson, Byrnes & Morton, Clifford H. Byrnes, Thomas H. Dowd, Jr.* of counsel;

*Letts & Quinn, Andrew P. Quinn;*

*Foley, Hoag & Eliot* of counsel;

*Pucci, Zito & Goldin, Matthew J. Zito;*

*Thomas D. Pucci,* Guardian Ad Litem;

*Norman M. Hussey,* Administrator c.t.a.;

*Herman J. Aisenberg,* Guardian Ad Litem, for respondent.